```
 1                UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MASSACHUSETTS
 2
                                    Criminal No.
 3                                  09-10273-WGY

 4
      *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
 5                                  *
      UNITED STATES OF AMERICA      *
 6                                  *
      v.                            *   CHANGE OF PLEA
 7                                  *
      JAMES RIGANO                  *
 8                                  *
      *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
 9

10
                 BEFORE:  The Honorable William G. Young,
11                              District Judge

12

13

14    APPEARANCES:

15            ROBERT E. RICHARDSON, Assistant United
        States Attorney, 1 Courthouse Way, Suite 9200,
16      Boston, Massachusetts 02210, on behalf of the
        Government
17

18            FEDERAL PUBLIC DEFENDER OFFICE (By Oscar
        Cruz, Jr., Esq.), 51 Sleeper Street, 5th Floor,
19      Boston, Massachusetts 02210, on behalf of the
        Defendant
20

21

22

23
                                    1 Courthouse Way
24                                  Boston, Massachusetts

25                                  March 4, 2011
```

1           **THE CLERK:**  All rise.  Court is in session, please

2     be seated.

3           Calling Criminal Action 09-10273, the United States

4     v. James Rigano.

5           **THE COURT:**  Good morning.  Would counsel identify

6     themselves.

7           **MR. RICHARDSON:**  Good morning, your Honor.  Robert

8     Richardson for the United States.

9           **MR. CRUZ:**  Good morning.  Oscar Cruz for James

10    Rigano.

11          **THE COURT:**  And Mr. Rigano's present in the

12    courtroom.

13          Mr. Cruz, do I understand that Mr. Rigano desires

14    to tender a change of plea?

15          **MR. CRUZ:**  He does, your Honor.

16          **THE COURT:**  He may come forward to be inquired of.

17          **THE CLERK:**  Right this way, sir, up here.

18          **THE COURT:**  And, counsel, this is a straight up

19    plea, there's no plea agreement?

20          **MR. CRUZ:**  That's correct, your Honor.

21          **THE COURT:**  Very well.

22          **THE CLERK:**  Sir, would you raise your right hand.

23          Do you solemnly swear that the answers you will

24    give to this Court will be the truth, the whole truth, and

25    nothing but the truth --

1          **THE DEFENDANT:**  Yes.

2          **THE CLERK:**  -- so help you God?

3          **THE DEFENDANT:**  Yes, ma'am.

4          **THE CLERK:**  Please be seated.

5                   **INQUIRY BY THE COURT**

6     **Q**    Could you state your full name?

7     **A**    James Michael Rigano.

8     **Q**    Mr. Rigano, my name is Bill Young.  I'm the judge who

9     presides in this session of the Court.  Now, when I ask your

10    attorney he says that you want to plead guilty to this

11    indictment against you.

12          Before I can let you plead guilty, and I have to

13    make the decision whether to let you plead guilty, I have to

14    find out a variety of things.  I have to find out that you

15    know what you're doing.  I need to know that you know what

16    you're giving up, because you give up things that are

17    terribly important to you if you plead guilty.  I have to

18    find out that you know what you're letting yourself in for,

19    what could happen to you if you plead guilty.

20          I have to find out that you want to plead guilty.

21    Not that you're happy about pleading guilty, but all things

22    considered, you've decided, not Mr. Cruz, not your family,

23    no one else, you've decided that the best thing for you to

24    do is plead guilty.  And then I have to find out that the

25    government has enough evidence that if we go to trial on

1     these charges you could be found guilty of the charges.

2           To find these things out I ask you questions.  Now,

3     if you don't understand something that I'm asking you, stop

4     me, because I have to ask it in a way you understand.

5           If, at any time, you want to talk to Mr. Cruz, he's

6     come up to stand right here by you to counsel you, that's

7     fine.  Just turn the chair away, I'll step away, you can

8     have a private conversation with him to decide whether you

9     want to go on or have something explained or whatever.

10          Also, if you plead guilty, I'll be the judge who

11    does the sentencing.  Not today, but when we get to

12    sentencing.  Now, if for any reason, having to do with me,

13    questions about the situation, anything, you decide you

14    would just as soon not plead guilty, that's fine.  I'm not

15    disturbed.  It doesn't mess up my day.  While I've got you

16    and the lawyers here, we'll get your case ready for trial.

17    But trial is one of your rights.  So I'm not angry if you

18    want a trial.

19          Now, everything's real world here.  Nothing I say

20    is said just to say it.  So real world, true, usually you

21    get a discount, you get something less if you plead guilty.

22    And the reason for that is the government doesn't have to

23    spend the taxpayers' money going through a trial.  Usually I

24    give that discount.  I don't have to, but usually I do,

25    unless I find out you're lying or have committed some other

1      crime.

2               Now, if we go to trial and you're found guilty

3      there's no discount.  You understand that?

4      A    Yes.

5      Q    But never would I punish you, not one day, for going to

6      trial.  That's your right is to have a trial.

7               Now, do you understand those things?

8      A    Yes, sir.

9      Q    Now, let's talk about do you know what you're doing.

10              How old are you, sir?

11     A    I'm 44.

12     Q    How far did you go in school?

13     A    Graduated high school.

14     Q    Have you ever been treated for a mental illness of any

15     sort?

16     A    I've sought counseling.  I wouldn't call it mental

17     illness.  Substance abuse issues, many years ago.

18     Q    About how long ago?

19     A    Over ten.

20     Q    All right.  Taking any medication today?

21     A    Yes.

22     Q    And I don't mean to be too personal.

23     A    Blood pressure, potassium, an antibiotic, and an allergy

24     medication.

25     Q    All right.  And are you taking those medications?

1    A    Excuse me?

2    Q    I mean, are you taking them as you're supposed to?

3    A    Oh, regularly, yes.

4    Q    Yes.  And how do you feel?  Normal?

5    A    As one could expect, yes.

6    Q    Well, all right.  But --

7    A    A little anxious.

8    Q    Given the situation I understand.  But, but for that

9    you're certainly oriented, you know who your lawyer is --

10   A    Yes.

11   Q    -- Mr. Cruz.  You know I'm the judge.  You know --

12   A    Yes.

13   Q    -- Mr. Richardson is the prosecutor.

14        I see you're wearing a wristband.  Does that have

15   anything to do with any medical treatment?

16   A    No, that is an identification bracelet so that they know

17   I am in fact who I am.

18   Q    All right.  I see.  All right.

19        Are you aware of any mental illness that you may

20   have that we don't know about?

21   A    I don't think so.

22   Q    All right.  Under the influence of any drug?

23   A    No.

24   Q    Under the influence of alcohol?

25   A    Negative.

1    **Q**    Do you know what you're charged with?

2    A    Yes, sir.

3    **Q**    Tell me?

4    A    Armed bank robbery.

5    **Q**    Three counts.

6    A    Three counts.

7    **Q**    And, I mean, it's not a test, but that's what we're

8    going to talk about.

9    A    I understand.

10    **Q**    So, with those charges against you, here's what the

11    government has to prove and here's what are your rights with

12    respect to them.

13            The three charges are the same so I'll just give

14    you the example of one such charge; they're the same but on

15    different occasions.

16            What the government has to prove for each one of

17    these charges, considered separately, is that you've

18    committed armed bank robbery.  Let's go through each one of

19    those.

20            That you or a confederate, they charged this Mr.

21    Dunnels as well, were armed.  And that means that you had

22    something that either was in fact capable of inflicting

23    bodily harm, injuring someone, a knife or a gun or

24    something, or purported to be a weapon which would increase

25    the fear of people.

1          So you had to be armed.  You and Mr. Dunnels, one

2     of you had to be armed.

3          Two, we're talking about robbery from a bank.  Now,

4     the word bank in the law is what, it's where the money is.

5     It's the lending institution, takes deposits, makes loans.

6          Now, what gets us into the courts of the United

7     States is, it's got to be either chartered under the laws of

8     the United States or its deposits have to be insured under

9     the FDIC, under the laws of the United States.  Now, it's

10    not required that you know that, as opposed to a state bank.

11    I mean, most banks are under the FDIC now, but not all.  And

12    the government's got to prove it, because that's what brings

13    us into the courts of the United States.

14         So, armed, United States bank as I've explained,

15    robbery.  Now, robbery is to take money or property from

16    someone by scaring them, by putting that person in fear.

17    The reason the person surrenders the money is because

18    they're afraid of you.  You have said something or done

19    something or displayed the weapon such that that's the

20    reason they comply.

21         Larceny, this is no law course, but larceny, if you

22    pick someone's pocket, you're still stealing their money,

23    but they don't know it, they're not frightened.  Robbery is

24    when you take it away from them, or him or her, by scaring

25    them, by frightening them.  That's the reason they give up

1    the money.

2           So, all three have to be proved for this charge,

3    armed bank robbery.  And each separate occasion, you're

4    alleged, you're charged with having done it three times,

5    each separate occasion they have to prove those elements to

6    a jury beyond a reasonable doubt.

7           Do you understand that?

8    A    Yes.

9    **Q**    Here are your rights with respect to that.  I keep

10   talking about proof and trial.  You have a right to a fair

11   and an impartial trial.  And you have a right to a jury to

12   make that decision.  Not me or anyone else.  A jury of the

13   people would have to find those three elements, tested

14   against each of the three occasions, beyond a reasonable

15   doubt, unanimously.

16          At that trial you have the right to confront the

17   witnesses against you.  Now, that means you can sit right

18   here in the courtroom and you watch them as they testify.

19   But far more important, it means Mr. Cruz can question them,

20   can cross-examine them, can introduce evidence on your

21   behalf, can argue to the jury that as to one or more of

22   these occasions there is in fact a reasonable doubt.  And

23   you have the right to testify, to push back against the

24   government's case.

25          Now, remember you don't have to testify.  You've

1  got that Fifth Amendment right to be silent.  The government

2  made this charge.  The charges.  The government has to prove

3  these charges beyond a reasonable doubt.

4          You don't have to do anything.  You don't have to,

5  certainly don't have to testify, but you don't have to call

6  witnesses or have Mr. Cruz argue or question.  You could be

7  at the defense table entirely silent.  Now, to the extent

8  you are silent, whether you're silent or not, I'm telling

9  the jury you start the trial innocent, truly innocent.

10  You're an innocent man.  And we see what the evidence shows.

11  You don't have to do anything.

12          And that applies to me, too.  You and I have never

13  met.  I see we've got you in custody.  But that's so you

14  show up for the trial.  The first I knew about this case is

15  when I looked at this indictment.  I've got no views about

16  you, and I've got no views whether you're not guilty or

17  guilty.  And, in fact, I've got to take you as innocent.

18  People plead guilty for a lot of different reasons.  Some

19  people say, well, I didn't do it, but the best deal I can

20  get, I'm afraid the jury would find me guilty, things like

21  that.  So I must take you as innocent, and I do.

22          And when I explain all this, I'm not giving you

23  anything.  These things are your rights.

24          Do you understand you have these constitutional

25  rights?

1   A   Yes, sir.

2   Q   Okay.  If you plead guilty you give them all away.

3   We're never going to have a trial.  We're never going to get

4   to see the evidence against you.  I'll ask Mr. Richardson to

5   tell me what he hopes he could prove.  And then I'll look at

6   you and I'll say is that true?  And that's it.  That's as

7   close as we ever come to the evidence.  Once I sentence you,

8   and that wouldn't be today, but when I'm ready to sentence

9   you, once I sentence you your right to be silent about these

10  crimes, that's gone.  I don't know the status of this

11  Dunnels.  But if he then comes to trial, you can be called

12  to testify.  And you can't say wait a minute, you can't make

13  me, I plead the Fifth.  The Fifth is gone because you're

14  guilty.  And once I sentence you, that's it, you have to

15  testify about these crimes.

16          And not the least important, if you plead guilty

17  this morning you go from being innocent in my eyes to being

18  a guilty person, and all that remains for me is what's the

19  sentence going to be.

20          Do you understand that?

21  A   Yes, sir.

22  Q   Now, let's talk about what may happen to you.

23          Ms. Smith reminds me, which I had candidly

24  forgotten, Mr. Dunnels already has pleaded guilty.  But you

25  do understand that if there's some legitimate reason, once

1    you're sentenced, not until you're sentenced, but once

2    you're sentenced the government could want to investigate

3    how this all came to be, these crimes, not other crimes, but

4    these crimes, you would have to tell them these things.

5            You understand?

6    A    Yes, sir.

7    Q    Now, this is a straight up plea, which means that I

8    don't have a written plea agreement.  And we need to know

9    what may happen to you, so I'm going to ask Mr. Richardson.

10           THE COURT:  Even though we haven't got a written

11   plea agreement, does the government have a position?  I'm

12   not asking that you state one, but I need to know any

13   promises you've made.  Any position you're going to take?

14           MR. RICHARDSON:  Your Honor, I have not made any

15   promises in that regard, but I can tell you in candor that

16   my recommendation as to this defendant would be the low end

17   of the career offender guidelines assuming acceptance of

18   responsibility, which would be 188.

19           THE COURT:  Thank you.

20   Q    Now, that's significant when he says that because I can

21   hold him to that.  So let's, let's talk about it.

22           THE COURT:  Your position is that he is a career

23   offender --

24           MR. RICHARDSON:  Yes, your Honor.

25           THE COURT:  -- given his prior convictions.

1          **MR. RICHARDSON:**  Yes.

2          **THE COURT:**  And that -- let's, let's put aside

3    acceptance for a moment and assume that he is found guilty

4    and that he's a career offender.  How do the guidelines work

5    out?

6          **MR. RICHARDSON:**  Your Honor, putting aside

7    acceptance of responsibility, the guidelines range would be

8    262 months to 327 months.  Now, the statutory maximum for a

9    single count would be 25 years, or 300 months.  But because

10   there is more than one count, assuming he were found guilty

11   of at least two counts, the Court could run the sentences

12   consecutively.

13         **THE COURT:**  Up to 327.

14         **MR. RICHARDSON:**  Exactly.  To achieve that result.

15   **Q**   Now, let's be clear here.  If we assume everything goes

16   against you, Mr. Rigano, everything goes against you, as I

17   understand the constitution and the laws of the United

18   States, I can send you to prison for 327 months.

19         Do you understand that?

20   **A**   Yes, sir.

21   **Q**   All right.  Now, when I ask Mr. Richardson he tells me,

22   and if you plead guilty I will hold him to it, that your

23   sentence, the recommended sentence, recommended by the

24   sentencing commission, I'd be advised by the sentencing

25   commission, is going to be 188 to 235 months.

```
 1                Do you understand that?

 2     A   Yes, sir.

 3     Q   And he says on behalf of the government he will

 4     recommend a sentence of 188 months.

 5                Do you understand that?

 6     A   Yes, sir.

 7     Q   Now, I'm going over these things, but it doesn't mean

 8     that I'm bound by any of them, except I can't go higher, as

 9     I understand the law, than 327.  The sentencing commission

10     is advising I ought to sentence you somewhere between 188 to

11     235.  Mr. Richardson's going to tell me, if you plead

12     guilty, he's going to tell me 188.  Since there's no

13     agreement here your lawyer can argue and the law will permit

14     me to go lower than 188.  And I'm not -- and you understand

15     that?

16     A   Yes.

17     Q   But I'm not saying anything.  I just need you to know

18     this.  I'm not bargaining with you.  And what you need to

19     know is that the worst that can happen to you is 327 months.

20                Do you understand that?

21     A   Yes, sir.

22     Q   All right.

23         THE COURT:  There's no enhancements that figure

24     into this, Mr. Richardson?  I just want to advise him.  I

25     require you to prove them.
```

1          **MR. RICHARDSON:**  Right.  No, correct, your Honor,

2     given that it's a career offender status it's one, one size

3     fits all.

4          **THE COURT:**  Okay.

5     **Q**   Now, other than the recommendation that Mr. Richardson

6     just told me here in open court, has anyone promised you

7     anything to get you to plead guilty?

8     A   No, sir.

9     **Q**   All right.  No one's said to you, now, look, go ahead

10    and plead guilty, I know what Judge Young will do, he'll be

11    this way or that way.  No sort of --

12    A   No, sir.

13    **Q**   No side deal, no advice I don't know about?

14    A   Not at all.

15    **Q**   Has anyone threatened you with anything to get you to

16    plead guilty?

17    A   No, sir.

18    **Q**   Are you covering up or taking responsibility for things

19    that Dunnels or somebody else in fact did?

20    A   I'm taking responsibility for the actions that I

21    participated in, for the things that I did.

22    **Q**   Very well.

23         Do you know that if you're not a citizen of the

24    United States conviction of these crimes may have the

25    consequence of your being deported from the United States,

```
 1    denied admission under the laws of the United States, denied

 2    naturalization under the laws of the United States?

 3              Do you know that?

 4    A   Yes, sir.

 5    Q   Have you had enough time to talk all this over with Mr.

 6    Cruz?

 7    A    If it's all right, I would like to ask him a quick

 8    question, if I may.

 9    Q   Absolutely.  Absolutely.

10              (Whereupon Mr. Cruz and Mr. Rigano conferred.)

11              MR. CRUZ:  Thank you, your Honor.

12    Q   Have you had enough time now?

13    A   Thank you.

14    Q   Do you have any questions you want to ask me about

15    anything I've said?

16    A   No, sir.

17    Q   Now, you're entitled to counsel, that's one of your

18    constitutional rights, and you're entitled to counsel who

19    knows what he's doing.  Now, I have my views of Mr. Cruz and

20    they're very favorable views.  But that doesn't count.

21              Have you had enough time to talk all this over with

22    him?

23    A   Yes, sir.

24    Q   Now, what passes between you and he, that's private.

25    But are you satisfied, you, are you satisfied with his
```

1   representation of you?  Do you think he's gotten for you

2   those rights which are your rights under the constitution

3   and laws?

4   A   Yes, sir, I do.

5   **Q**   Do you think he's been a good lawyer for you?

6   A   Sure.

7   **Q**   All right.  Still want to plead guilty?

8   A   Yes, I do.

9   **Q**   Why?

10  A   Because it's just time to face the music.  There's no

11  reason for me to drag this out any further.  There's no

12  reason for me to waste your time or the Court's time or Mr.

13  Cruz's time or Mr. Richardson's time.

14  **Q**   Now -- I didn't mean to interrupt.

15  A   No.  That's --

16  **Q**   Now, as I listen to you that means, when you say face

17  the music that means you're going to own up to being guilty

18  of these crimes; is that right?

19  A   Yes, sir.

20  **Q**   Now, as I said, I'm going to turn now to Mr. Richardson

21  and I want him briefly to tell me what he thinks he can

22  prove as it pertains to you.  You listen to what he says

23  because I'm going to ask you whether that's true.

24              **THE COURT:**  All right, Mr. Richardson, briefly.

25              **MR. RICHARDSON:**  Yes, your Honor.

1          **THE DEFENDANT:**  Excuse me?

2          **THE COURT:**  Yes.

3          **THE DEFENDANT:**  Is there any way he could speak up?

4     I have a hard time hearing you.

5          **THE COURT:**  Yes, he certainly will.  He'll either

6     come closer or -- and if you don't hear him just raise your

7     hand and I'll get him -- you're entitled to hear everything

8     he says.

9          Go ahead, Mr. Richardson.

10          **MR. RICHARDSON:**  I can use the podium, your Honor,

11     if that helps.

12          **THE COURT:**  That's fine.  Yes, come closer.

13          **THE DEFENDANT:**  Thank you.  I apologize for the

14     inconvenience.

15          **THE COURT:**  No apology -- it's no inconvenience.

16          **MR. RICHARDSON:**  I've got a soft voice.  I

17     apologize.

18          **THE COURT:**  It's your right.  You need to know

19     everything that we do.

20          **MR. RICHARDSON:**  Your Honor, as to Count 1, the

21     evidence at trial would have shown that on Saturday, May 30,

22     2009, at around 11:16 a.m., a white male, wearing a

23     backpack, a bandanna over the lower part of his face,

24     sunglasses, gloves and a baseball cap, entered the Eagle

25     Bank located at 466 Broadway, Everett, Massachusetts,

1    brandishing what appeared to be a black handgun and shouting

2    in substance, "This is a robbery, everyone get down on the

3    floor."  This male vaulted over the teller counter and took

4    cash from drawers that a bank employee was ordered to open.

5    This male left the bank with approximately $8,620 in cash.

6    The Eagle Bank was then and is now insured by the Federal

7    Deposit Insurance Corporation, or FDIC.

8          As to Count 2, the evidence at trial would have

9    shown that on Saturday, June 27, 2009, at around 12:18 p.m.,

10   a white male, wearing a hooded sweatshirt, sunglasses and a

11   bandanna covering part of his face, entered the Brookline

12   Bank located at 196 Commercial Street in Malden,

13   Massachusetts and screamed in substance, "This is a robbery,

14   everyone get down."  The male jumped over the teller counter

15   and took money from the top drawer of a teller station,

16   removing a battery pack from a dye pack and putting the dye

17   pack into a backpack he was carrying.  The male then took

18   money from the bottom teller drawer.  Meanwhile, a second

19   white male, also wearing a hooded sweatshirt, bandanna and

20   sunglasses, entered the bank holding what appeared to be a

21   black handgun.  This second male ordered customers onto the

22   floor as well.  The first male went back over the counter

23   having taken approximately $3,805 in cash, and the two males

24   fled down Adams Street.  Brookline Bank was then and is now

25   insured by the FDIC.

1          The evidence as to Count 3 would have shown that

2     three days later, on June 30, 2009, at approximately

3     3:40 p.m., two white males entered the East Cambridge

4     Savings Bank located at 285 Highland Avenue, Somerville,

5     Massachusetts, each wearing a hooded sweatshirt, sunglasses

6     and a bandanna covering the lower part of the face.  One of

7     them vaulted the teller counter and ordered the teller in

8     substance to open your drawer, open your second drawer.  The

9     male took money from both drawers and then approached

10    another teller and took money from that teller's drawers,

11    taking a total aggregate amount of approximately $10,409

12    which he put into a backpack.  Meanwhile, the other white

13    male stayed in the lobby, pointing what appeared to be a

14    black handgun at the tellers.  The two males left the bank.

15    East Cambridge Savings Bank was then and is now insured by

16    the FDIC.

17         The evidence further would have shown that

18    following this third robbery, a witness observed two robbers

19    running to a black Lincoln Town Car, got the plate number

20    and reported that to the police.  The two males got into the

21    Lincoln and fled the area.  The information was radioed to

22    all area police departments by the so-called BAPERN radio

23    system and meanwhile the police learned that the car was

24    registered to a car rental company and learned from the car

25    rental company that it had been rented to this defendant,

1    James Rigano.

2           Later that afternoon a Boston police officer was

3    performing a paid detail in Charlestown, Massachusetts.  He

4    saw this vehicle, radioed for assistance, ran up to the

5    vehicle and ordered the driver, who turned out to be this

6    defendant, to raise his hands.  The defendant complied.  A

7    back seat passenger, Eric Leonard, likewise was apprehended.

8    A third passenger, who was in the front passenger seat, ran

9    but was caught after a short chase and proved to be

10   co-defendant, Terry Dunnels.

11          And Eric Leonard by the way has been separately

12   charged by information in this case.

13          Both Dunnels and Leonard would have testified at

14   trial.  Dunnels would have testified, among other things,

15   that for each of the three robberies the defendant had

16   requested that he participate, had driven to and picked up

17   Dunnels in New York state, and as to the first two robberies

18   at least had returned him to New York state.

19          **THE COURT:**  Your use of pronouns slows me down.

20   You say the evidence is that Mr. Rigano requested Mr.

21   Dunnels to participate, went and got him from New York, et

22   cetera.

23          **MR. RICHARDSON:**  Exactly, your Honor, yes.

24          **THE COURT:**  Go ahead.

25          **MR. RICHARDSON:**  And similarly, Leonard would have

1    testified that Mr. Rigano recruited him to participate in

2    the robberies.

3         Both Dunnels and Leonard would have testified that

4    for each of the three robberies, Mr. Rigano was the getaway

5    driver.  They would have testified that Dunnels is the

6    robber who vaulted the counter each time.  They would have

7    testified that for the first robbery Leonard served as a

8    lookout, and for the second and third he entered the bank

9    with Dunnels and had the black item that appeared to be a

10   handgun but was actually a BB gun.

11        One or both of them would have testified that the

12   defendant, with respect to the first robbery, the Eagle Bank

13   robbery, entered that bank before the first robbery, stood

14   in line to obtain change while he surveilled the inside of

15   the bank and left with the change he had, that before the

16   second robbery Mr. Rigano placed a call to the Malden Police

17   to cause police to respond to another area of Malden and

18   thereby drew them away from the Brookline Bank, and that

19   before the third robbery, as before the first robbery, the

20   defendant entered this time the East Cambridge Savings Bank

21   and made change while he was surveilling the inside of the

22   bank.  The evidence would have included bank surveillance

23   images from the first and the third banks clearly depicting

24   the defendant making change at teller windows before the

25   robberies and a recording of the diversionary call that was

1    made before the second robbery.

2              **MR. CRUZ:**  Your Honor, if I may, before Mr. Rigano

3    answers.  And Mr. Rigano can certainly speak for himself.

4    But what I would like to do is preface his response by

5    stating that Mr. Rigano is prepared to plead guilty to all

6    of the charges and admit to the elements of each of those

7    offenses.  However, he is not required to give any credence

8    or accept any statement made by either Mr. Dunnels or

9    Mr. Leonard with regard to their respective roles in this

10   offense.  In other words --

11             **THE COURT:**  No, I'm following what you're saying.

12             **MR. CRUZ:**  And specifically, your Honor --

13             **THE COURT:**  I'm not, I'm not clear as a practical

14   matter.

15             **MR. CRUZ:**  Specifically, your Honor --

16             **THE COURT:**  Yes.

17             **MR. CRUZ:**  -- the comment having to do with

18   Mr. Dunnels making a statement to the effect that Mr. Rigano

19   called him and recruited him and asked him to participate in

20   this robbery --

21             **THE COURT:**  Oh, I --

22             **MR. CRUZ:**  -- is the point of contention --

23             **THE COURT:**  If that's it, that's fine.

24             **MR. CRUZ:**  -- your Honor.

25             **THE COURT:**  And I appreciate that.  And if you

1    dislike in any way what I'm now going to ask him please

2    interrupt.

3              **MR. CRUZ:**  Sure.

4    **Q**  Your lawyer's doing what he's supposed to do, because I

5    was going to ask you generally is that true.  Now, I'm going

6    to ask you a more precise question.

7              Put aside how the three of you got into this with

8    respect to any of these three robberies.  Here's my

9    question.  Is what Mr. Richardson said about what you did

10   with respect to each of the three robberies in concert with

11   Mr. Dunnels and, Mr. Dunnels and Mr. Leonard, are those

12   statements true?

13   **A**  I did in fact drive the car and Mr. Leonard did in fact

14   hold the floor, Mr. Dunnels did in fact jump the counter in

15   all three instances, every robbery that he described.

16   **Q**  Right.  There was the other business about you casing

17   it.  Is that true?

18   **A**  I went in and made change and came out with the

19   information.  Mr. Dunnels said there was no glass, that he

20   could actually get over the counter.

21   **Q**  And the call business; is that true?

22   **A**  Yes, sir.

23   **Q**  All right.  So, as I understand it you're prepared to

24   plead guilty primarily because you're guilty but, of course,

25   you're looking to hold the government to that 188 month

1    recommendation, but primarily because you are in fact guilty

2    and as you say you'll face the music for these three

3    robberies?

4    A    Yes.

5         **THE COURT:**   All right.   I find that Mr. James

6    Rigano knowingly, intelligently and voluntarily exercises

7    his right to plead guilty and the clerk may accept the plea.

8    **Q**    Now, this is the key point.   She's going to stand up and

9    say you've previously pleaded not guilty.   How do you -- do

10   you want to change your plea?   You could stop now, that's

11   fine, and we'll get set for trial.   But if you say yes,

12   she'll say how do you plead, guilty or not guilty?   If you

13   say guilty then as to these three charges you're guilty, no

14   taking it back, no starting over, all that remains is what

15   sentence I'm going to impose upon you.

16        Do you understand?

17   A    Yes, sir.

18   **Q**    Very well.

19   A    If I may.

20   **Q**    Of course you may.

21   A    I wrote a letter and I don't know if it would be best to

22   give it to you myself or to have my attorney give it to you.

23   Or if I should read it to you.   But I would like you to --

24   **Q**    Well --

25   A    If it's possible before I actually stand up and --

1    **Q**    Before you plead you would like me to read it?

2    A    If you don't mind.

3    **Q**    I don't mind at all.

4            **MR. CRUZ:**  I have it here, your Honor.

5            **THE COURT:**  Yes.  Fine.

6            **THE DEFENDANT:**  Thank you.

7            **MR. CRUZ:**  And for the record, your Honor, we can,

8    we can make it a part of the docket after the fact so

9    Mr. Richardson has access to it.

10           **THE COURT:**  Oh, yes, I will of course do that.

11           (Pause in proceedings.)

12   **Q**    All right, thank you, Mr. Rigano, and we will make this

13   part of the record.  And of course I will reread this again

14   to familiarize myself shortly before the time of sentencing.

15   And we're going to keep this on file.

16           The letter is perfectly consistent with what you've

17   admitted to here today and doesn't take back or change

18   anything you've admitted to.  I'm going to let obviously

19   Mr. Richardson see it.

20           Let me ask you now.  Do you, do you want to plead

21   guilty to these three charges?

22   A    Yes, sir.

23           **THE COURT:**  All right.  Then the clerk may accept

24   the plea.

25           **THE CLERK:**  James Rigano, you've previously pleaded

1  not guilty to an indictment charging you with violating in

2  Counts 1 through 3, 18 U.S.C., Section 2113(a)(d), armed

3  bank robbery.

4         Do you now want to change your plea from not guilty

5  to guilty?

6         **THE DEFENDANT:**  Yes, ma'am.

7         **THE CLERK:**  What say you now to Counts 1 through 3,

8  guilty or not guilty?

9         **THE DEFENDANT:**  Guilty.

10        **THE COURT:**  Thank you.  He may step down and I will

11  remand him.

12        (Whereupon the defendant stepped down.)

13        **THE COURT:**  I propose sentencing for the 10th of

14  May at 2:00 p.m.  Is that satisfactory, Mr. Richardson?

15        **MR. RICHARDSON:**  That's fine, your Honor, thank

16  you.

17        **THE COURT:**  And Mr. Cruz?

18        **MR. CRUZ:**  Yes, your Honor.

19        **THE COURT:**  We'll docket the letter.

20  Mr. Richardson, you're going to want to look at it because

21  it makes reference to Mr. Dunnels.

22        **MR. RICHARDSON:**  I thought it might.

23        **THE COURT:**  I want it available with respect to

24  that sentencing as well.

25        **MR. RICHARDSON:**  Yes.  I understand.

1              **THE COURT:**  All right.  He's remanded to the

2    custody of the marshals.  We'll recess.

3              **THE CLERK:**  All rise.  Court is in recess.

4              (Whereupon the matter concluded.)

5

6

7                    **C E R T I F I C A T E**

8

9

10             I, Donald E. Womack, Official Court Reporter for

11   the United States District Court for the District of

12   Massachusetts, do hereby certify that the foregoing pages

13   are a true and accurate transcription of my shorthand notes

14   taken in the aforementioned matter to the best of my skill

15   and ability.

16

17

18

19

20             /S/ DONALD E. WOMACK 2-16-2012
               _____
21                  DONALD E. WOMACK
                  Official Court Reporter
22                   P.O. Box 51062
             Boston, Massachusetts 02205-1062
23                womack@megatran.com

24

25